### R. BEAN v. J. T. MATHIEU, SHERIFF, ETC.

1. The jurat to a petition for *habeas corpus* was not in strict conformity with the statute, (Paschal's Digest, Article 2597,) and a deputy clerk certified it with his own name for the clerk, instead of the clerk's name by him as deputy ; but these objections were not raised before the judge from whose decision this appeal is taken. *Held*, that it is too late to raise such objections, for the first time, in this court.

2. If a person, not attempting the perpetration of arson, rape, robbery or burglary, shoot another with intent to kill, and under circumstances which would render the killing of the person aimed at murder in the first degree, but miss him and unintentionally hit and kill another person, such killing could be no more than murder in the second degree ; and, as such, is a bailable offense. (Paschal's Digest, Article 1651, cited by the court.)

APPEAL from Gonzales. Heard below by the Hon. Henry Maney.

The appellant was indicted at the October term, 1870, of the Gonzales District Court, for the murder of Solomon Deutsch, on or about the third of December, 1867. Being in custody of the appellee, who was sheriff of the county, he sued out a writ of *habeas corpus* returnable to the court then in session. After a hearing of the case under the writ, the court below remanded the appellant to the custody of the sheriff, without bail ; and this appeal ensued.

The killing occurred in the village of Rancho, in Gonzales county, where the appellant lived, and where the deceased was engaged in conducting a store for S. Frank & Co.

On the day of the killing, early in December, 1867, Eli and Frank Collins, brothers, were in Rancho. Some two months or more previous, one Murray, a connection by marriage, of the Collins brothers, applied to Bean, the appellant, for assistance in arresting them for horse stealing, and they, in consequence, harbored against Bean a most violent resentment, evidenced by fre-

quent and sanguinary threats and menacing conduct directed at him. The first observed of any of the parties, on the day of the killing, was a meeting between Eli Collins and Bean, at the door of the store of Mr. Phillips. They were quarreling, but the witness gave no further particulars of what passed between them. Bean went from there to his residence, about a hundred yards distant, and took his seat on the gallery of his house, which was nearly opposite and between a hundred and a hundred and fifty yards from Deutsch's store.

Eli Collins, after separating from Bean at Phillips's store, proceeded to Deutsch's. Stepping in, he called Mr. Conway, an assistant in the store, and asked him for a drink of whiskey, telling him that he apprehended a difficulty with Bean. He then walked out and commenced talking and cursing around the door, and after working himself into a fury he made two or three loud yells, which the witnesses regarded as " dares " or challenges to Bean. Thereupon Bean stepped into his house, and soon afterwards was seen approaching Deutsch's store, with a double-barreled shot gun in his hand. Eli Collins stepped back into the store soon after venting his , yells, and when Bean was seen approaching, Frank Collins called out from the street to Eli, that yonder came Bean with his shot gun. Eli then jumped over the counter and took a six-shooter which was lying on one of the shelves. Mr. Conway endeavored to get it away from him, but without success, and Eli took his stand with it in the store door, leaning against the panel and holding the six-shooter by his side. While this was going on at the store, Bean was slowly but steadily approaching it. Conway, anxious to prevent a fight, went out and intercepted him, and used every exertion to get him to go back, but he was not able to stop or divert him. On getting within some fifteen steps of the store door, in which Eli Collins was standing with his pistol, Bean suddenly, and · " as quick as thought," as a witness put it, raised his gun and fired, and turning instantly toward where

Frank Collins was, in the street, he fired the other barrel at him. The " casualities " proved to be one killed and two wounded. Eli Collins was severely wounded in the arm and Frank badly shot in the leg.

But the most deplorable result was the death of Deutsch. At the instant that Bean discharged his first barrel at Eli Collins, the deceased was passing behind his counter and toward the rear of the house, and thus brought himself within range. One buck-shot struck him in the corner of the eye, and he died almost upon the instant, without uttering anything but an expiring gasp. He and Bean had always been warm and intimate friends, and the latter, on being informed of this unwonted result of his act, burst into tears and exclaimed that he would as soon have killed his own brother.

The witnesses all gave Bean a high character as a man and as a peaceful and orderly citizen. But the Collins brothers were regarded as desperadoes, and reputed to be horse thieves. There was ample evidence that for weeks previous to the killing, they had been endeavoring to bring Bean into a conflict. On one occasion, they posted themselves a short distance in front of his house, in the night time, cursing and abusing him, and daring him to come out. They made repeated threats against him, which had been communicated to him, and, so far as this record discloses, he had quietly tolerated their conduct until the occasion in which the unfortunate Deutsch met his death.

*Miller & Sayers*, for the appellant.—The evidence shows that Eli and Frank Collins had threatened the life of defendant at various times; that they had waylaid his house with intent to assassinate him; that on the day of the killing they had attempted to bring on a difficulty for the purpose of killing; that at the time of the killing the Collins, by words and acts then done, manifested an intention to carry those threats into execution, by their

XXXIII—38

loud and abusive talk and by having arms. Further, it is proved that the Collins were men of violent and desperate character and notorious outlaws, and were such persons as might be reasonably expected to carry their previous threats into execution. From the evidence we conclude that the defendant had a right, under the circumstances, to shoot Eli Collins. (Paschal's Digest, Art. 2270; Pridgen v. The State, 31 Texas R., 420; Johnson v. The State, 27 Texas, 758.)

If, then, under the law, the defendant had the right to shoot Eli Collins to protect his own life, and in shooting at Collins he accidently killed Deutsch, the only question that could be raised is, was the defendant guilty of negligent homicide of the first degree, (Paschal's Digest, Arts. 2235, 2236,) or was the homicide excusable? (Art. 2233 Paschal's Digest.)

If defendant was guilty of negligent homicide he would be entitled to bail at a moderate sum, as the punishment is not severe. (Pas. Dig.; Art. 2243.) If the homicide was excusable, he would be subject to no punishment.

But if we admit, for the sake of argument, that if the defendant had killed Eli Collins when he fired at him, and that this killing would have been murder of any degree, and at the same time accidentally killed Deutsch, against whom he had no malice whatever, what would the offense of killing Deutsch amount to in law? It is not murder of the first degree, because not done upon express malice, or in the attempt to commit arson, rape, robbery, or theft at night; (P. D., Arts. 2266, 2267,) and hence would be murder of the second degree, and bailable.

But if it be held by the court that the attempt to shoot Eli Collins was a felony, still by Paschal's Digest (Penal Code), Article 1651, "if in committing a felony one by mistake or accident do another act which if voluntarily done would be felony, he shall be punished for the offense actually committed."

This, we take it, means that the act which defendant was at-

tempting to commit, shall be left entirely out of consideration, and that the only inquiry should be, what was the offense actually committed. The proof clearly shows that there was no malice on the part of defendant towards Deutsch, and hence that the killing of Deutsch would not be murder in any degree, (McCoy v. State, 25 Texas Rep.,) or if it could be made any grade of murder, it would only be upon implied malice, and hence further we conclude, that no accidental killing can be murder in the first degree under our statute, unless the accidental killing is done by poison, starving, torture, or in the attempt at the perpetration of rape, robbery, arson, burglary or theft at night. (Paschal's Dig,, Art. 2267.) Hence an accidental killing of one man in the attempt to murder another, is not mentioned in the statute as making murder of the first degree, and killing in the attempt to commit other crimes being expressly mentioned as making cases of murder in the first degree, by the rule that the expression of one crime is an exclusion of others not mentioned, renders a killing in the attempt to murder not murder in the first degree.

In addition to this it is expressly stated that all murder not done in such manner as to make it murder in the first degree, under the statute, is murder in the second degree, and hence bailable.

*Wm. Alexander*, Attorney General, for the State.—The oath or jurat appended to the petition of Bean for the writ of *habeas corpus*, is not such as if false throughout would sustain an indictment for false swearing (or perjury), and is insufficient. "Oath must be made that the allegations of the petition are true according to the belief of the petitioner." (Code of Crim. Proc., Art. 2597.)

Bean appears to have only attempted to swear " that the facts set forth in the foregoing petition are true and correct," nothing more. Besides, the oath is not certified by the clerk, by his deputy, but by the deputy for the clerk, which has been held often

to· be insufficient.    Article 2588· of the code does not obviate these
material defects.   (See also· Art. 1651.)

The punishment of murder in the·first degree has· been modified
by section· eight, of article five, of the Constitution.

Shooting into a man's house when he is· there (in order to kill
at all hazards another man), and killing him, though with the
intent to kill another, is murder in the first degree.

WALKER, J.—The questions raised by the Attorney General in
this case are such as· might have been urged in the district court,
and would there have been fatal to the proceeding, unless the
court had seen proper to· derive the authority for entertaining the
petition from Article 2599 Code of Criminal Procedure (Paschal's
Digest), which reads thus·: "A judge of the district court who
has knowledge that any person is illegally confined or restrained
in his liberty within his district may issue the· writ of *habeas
corpus* without any application being made for the same."

The verification to the petition should cover all the· allegations
of fact contained therein, and a deputy clerk who· takes the jurat
should sign the name of the clerk acting by deputy, and not his
own name acting for the clerk.

But we think these objections come too late when made· for the
first time in this court.    We pass, then, to consider whether or
not the district court erred· in refusing to admit the appellant to·
bail.

There is so little· conflict in the  evidence that our labor is con-
fined to determining what is the nature and degree of the crime
which it proves in law.

We have no hesitation in saying, that had the appellant Bean
killed either of the Collins brothers, by the shots which he aimed
at them, and by one of which the deceased Deutsch come to his
death, he would have been guilty of murder in the first degree;
and there is nothing in the evidence of threats previously made by

the Collinses, which, not being accompanied by the ability and apparent intention of putting them into execution *at the time* of the killing, could mitigate or reduce the degree of the crime below murder in the first degree. (See Johnson v. the State, 27 Texas Reports, and Dawson v. the State, decided at the April term of the Tyler court for the year 1870, held at Austin, wherein the case of Pridgen v. the State is overruled. Dawson v. the State, is examined and approved at the same term of the court, in Myers *et al* v. the State.)

But Bean did not kill either of the Collins brothers, and did kill Deutsch; and he killed him, not in any attempt at arson, rape, robbing or burglary, nor by poison, starving, or torture, and is therefore not guilty of murder in the first degree, but of murder in the second degree, if the evidence before us be veritable.

"If one intending to commit a felony, and in the act of preparing for or executing the same, shall, through mistake or accident do another act, which if voluntarily done would be a felony, he shall receive the punishment affixed by law to the offense actually committed." (Paschal's Digest, Art. 1651.)

There was no express malice, nor does the evidence bring the case within any of the definitions of murder in the first degree, and all murder not of the first is murder of the second degree, and is therefore, under our constitution and laws, bailable.

The judgment of the district court is reversed, and the appellant will be admitted to bail in the sum of three thousand dollars, to the acceptance of the sheriff of Gonzales county.

Reversed and bail allowed.